UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

JOHNNY B. DREW,

    Plaintiff,

vs.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case No. 3:18-cv-217

District Judge Walter H. Rice
Magistrate Judge Michael J. Newman

_____

**REPORT AND RECOMMENDATION[1] THAT: (1) THE NON-DISABILITY FINDING AT ISSUE BE FOUND UNSUPPORTED BY SUBSTANTIAL EVIDENCE, AND REVERSED; (2) THIS MATTER BE REMANDED TO THE COMMISSIONER UNDER THE FOURTH SENTENCE OF 42 U.S.C. § 405(g) FOR PROCEEDINGS CONSISTENT WITH THIS OPINION; AND (3) THIS CASE BE CLOSED**
_____

This is a Social Security disability benefits appeal. At issue is whether the Administrative Law Judge ("ALJ") erred in finding Plaintiff not "disabled" for the closed period between his alleged onset date of January 30, 2013 and September 1, 2016. The ALJ determined that after September 1, 2016, Plaintiff was disabled and entitled to Supplemental Security Income ("SSI"). However, the ALJ's finding precluded Plaintiff from receiving Disability Insurance Benefits ("DIB") because his date last insured expired nine months prior to the disability onset date, and an individual must be fully insured at the time of disability to qualify for DIB. 20 C.F.R. § 404.101(a). Plaintiff's appeal concerns this non-disability finding for the closed period only and nothing in this opinion shall disturb the ALJ's finding that Plaintiff was disabled as of September 1, 2016. This case is before the Court on Plaintiff's Statement of Errors (doc. 9), the Commissioner's memorandum in

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

opposition (doc. 13), Plaintiff's reply (doc. 14), the administrative record (doc. 7),[2] and the record as a whole.

## I.

### A. Procedural History

Plaintiff filed for SSI and DIB[3] alleging, as noted, a disability onset date as of January 30, 2013. PageID 1804. Plaintiff claims disability as a result of a number of alleged impairments including, *inter alia*, cervical degenerative disc disease, lumbar degenerative disc disease, bilateral shoulder degenerative joint disease ("DJD"), carpal tunnel, an anxiety disorder, and depression. PageID 611.

After an initial denial of his application, Plaintiff received a hearing before ALJ Gregory G. Kenyon on January 5, 2015. PageID 63-91. The ALJ issued a written decision on February 24, 2015 finding Plaintiff not disabled. PageID 43-56. ALJ Kenyon's opinion was ultimately remanded by this Court on July 17, 2017 for a more complete analysis of the medical opinions of record. *Drew v. Comm'r of Soc. Sec.*, No. 3:16-CV-289, 2017 WL 3024248 (S.D. Ohio July 17, 2017).

On remand, Plaintiff received a second administrative hearing before ALJ Kenyon on March 2, 2018. PageID 635-61. On consideration of new medical evidence submitted by Plaintiff, ALJ Kenyon (hereinafter "ALJ") issued a written decision on May 2, 2018 finding Plaintiff disabled as of September 1, 2016. PageID 625. Prior to that date, however, the ALJ found at Step Five that, based upon Plaintiff's residual functional capacity ("RFC") to perform a reduced range of light

---

[2] Hereafter, citations to the electronically-filed administrative record will refer only to the PageID number.
[3] "The Commissioner's regulations governing the evaluation of disability for DIB and SSI are identical . . . and are found at 20 C.F.R. § 404.1520, and 20 C.F.R. § 416.920 respectively." *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). Citations in this Report and Recommendation to DIB regulations are made with full knowledge of the corresponding SSI regulations, and *vice versa*.

work,[4] "there were jobs that existed in significant numbers in the national economy that [Plaintiff] could have performed[.]" PageID 43-50.

Thereafter, the Appeals Council denied Plaintiff's request for review, making the ALJ's partial disability finding the final administrative decision of the Commissioner. PageID 32-34. *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). Plaintiff then filed this timely appeal, arguing that the ALJ erroneously determined that he was not disabled prior to September 1, 2016. *Cook v. Comm'r of Soc. Sec.*, 480 F.3d 432, 435 (6th Cir. 2007). This non-disability finding for the closed period between January 30, 2013 and September 1, 2016 is now before the court for review.

### B. Evidence of Record

The evidence of record is adequately summarized in the ALJ's decision (PageID 607-27), Plaintiff's Statement of Errors (doc. 9), the Commissioner's memorandum in opposition (doc. 13), and Plaintiff's reply (doc. 14). The undersigned incorporates all of the foregoing and sets forth the facts relevant to this appeal herein.

## II.

### A. Standard of Review

The Court's inquiry on a Social Security appeal is to determine (1) whether the ALJ's non-disability finding is supported by substantial evidence, and (2) whether the ALJ employed the correct legal criteria. 42 U.S.C. § 405(g); *Bowen* v. *Comm'r of Soc. Sec.,* 478 F.3d 742, 745-46 (6th

---

[4] Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and "requires a good deal of walking or standing, or . . . sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b). Sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." 20 C.F.R. § 404.1567(a).

3

Cir. 2007). In performing this review, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). When substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found Plaintiff disabled. *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Thus, the ALJ has a "'zone of choice' within which he [or she] can act without the fear of court interference." *Id.* at 773.

The second judicial inquiry -- reviewing the correctness of the ALJ's legal analysis -- may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[A] decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746.

**B.     "Disability" Defined**

To be eligible for disability benefits, a claimant must be under a "disability" as defined by the Social Security Act. 42 U.S.C. § 423(d)(1)(A). Narrowed to its statutory meaning, a "disability" includes physical and/or mental impairments that are both "medically determinable" and severe enough to prevent a claimant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *Id.*

Administrative regulations require a five-step sequential evaluation for disability determinations. 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step ends the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), the complete sequential review poses five questions:

4

1. Has the claimant engaged in substantial gainful activity?;

2. Does the claimant suffer from one or more severe impairments?;

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the "Listings"), 20 C.F.R. Subpart P, Appendix 1?;

4. Considering the claimant's RFC, can he or she perform his or her past relevant work?; and

5. Assuming the claimant can no longer perform his or her past relevant work -- and also considering the claimant's age, education, past work experience, and RFC -- do significant numbers of other jobs exist in the national economy which the claimant can perform?

20 C.F.R. § 404.1520(a)(4); *see also Miller v. Comm'r of Soc. Sec.,* 181 F. Supp.2d 816, 818 (S.D. Ohio 2001).  A claimant bears the ultimate burden of establishing disability under the Social Security Act's definition.  *Key v. Comm'r of Soc. Sec.*, 109 F.3d 270, 274 (6th Cir. 1997).

**III.**

In his Statement of Errors, Plaintiff argues that the ALJ erred in (1) evaluating the opinion of his treating physician; and (2) evaluating the opinion of the state agency's physicians.  Doc. 9 at PageID 1816.  As explained further below, the undersigned agrees with Plaintiff's assignments of error and recommends remand for the limited purpose of determining whether Plaintiff was disabled for the closed period between the alleged onset date and September 1, 2016.

Until March 27, 2017, "the Commissioner's regulations [that apply to this appeal] establish[ed] a hierarchy of acceptable medical source opinions[.]" *Snell v. Comm'r of Soc. Sec.*, No. 3:12-cv-119, 2013 WL 372032, at *9 (S.D. Ohio Jan. 30, 2013).  In descending order, these medical source opinions are: (1) treaters; (2) examiners; and (3) record reviewers.  *Id*.  Under the regulations then in effect, the opinions of treaters are entitled to the greatest deference because they "are likely to be . . . most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained

5

from the objective medical findings alone or from reports of individual examinations[.]" 20 C.F.R. § 404.1527(c)(2).

A treater's opinion must be given "controlling weight" if "well-supported by medically acceptable clinical and laboratory diagnostic techniques and . . . not inconsistent with the other substantial evidence in [the] case record." *LaRiccia v. Comm'r of Soc. Sec.*, 549 F. App'x 377, 384 (6th Cir. 2013). Even if a treater's opinion is not entitled to controlling weight, "the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also* 20 C.F.R. § 404.1527(c).[5]

After treaters, "[n]ext in the hierarchy are examining physicians and psychologists, who often see and examine claimants only once." *Snell*, 2013 WL 372032, at *9.

Record reviewers are afforded the least deference and these "non-examining physicians' opinions are on the lowest rung of the hierarchy of medical source opinions." *Id.* Put simply, "[t]he regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual [claimant] become weaker." *Id.* (citing SSR 96-6p, 1996 WL 374180, at *2 (July 2, 1996)). In the absence of a controlling treating source opinion, an ALJ must "evaluate all medical opinions" with regard to the factors set forth in 20 C.F.R. § 404.1527(c), *i.e.,* length of treatment history; consistency of the opinion with other evidence; supportability; and

---

[5] In essence, "opinions of a treating source . . . must be analyzed under a two-step process, with care being taken not to conflate the steps." *Cadle v. Comm'r of Soc. Sec.*, No. 5:12-cv-3071, 2013 WL 5173127, at *5 (N.D. Ohio Sept. 12, 2013). Initially, "the opinion must be examined to determine if it is entitled to controlling weight" and "[o]nly if . . . the ALJ does not give controlling weight to the treating physician's opinion is the opinion subjected to another analysis based on the particulars of" 20 C.F.R. § 404.1527. *Id.*

6

specialty or expertise in the medical field related to the individual's impairment(s). *Walton v. Comm'r of Soc. Sec.*, No. 97-2030, 1999 WL 506979, at *2 (6th Cir. June 7, 1999).

### A. Mental Limitations

Plaintiff's treating physician since 2008, Carlos Menendez, M.D., opined regarding Plaintiff's mental functional abilities on a number of occasions. In May 2013, Dr. Menendez found that, due to Plaintiff's generalized anxiety disorder, his ability to tolerate stress was "poor," and he showed only "mild improvement" from treatment. PageID 311. In August 2013, Dr. Menendez noted that Plaintiff "has poor concentration[,]" "is forgetful[,]" and "has difficulty dealing with stressful situations." PageID 354.

In January 2014, Dr. Menendez found Plaintiff was "markedly"[6] limited in his ability to understand and remember instructions; maintain attention and concentration for extended periods; complete a normal workday and workweek without unreasonable interruptions from his impairments; and set realistic goals or make plans independently of others. PageID 476. Finally, in March, 2014, Dr. Menendez found that Plaintiff had "marked" limitations and explained that Plaintiff's "symptoms occur daily and would cause frequent absence"; "he would have difficulty keeping up"; "stress would exacerbate his anxiety"; and "he has poor concentration and attention." PageID 478-88.

The ALJ afforded "little weight whatsoever" to these opinions. PageID 615. The undersigned finds multiple errors in his assessment. Initially, the Court notes that the ALJ failed to analyze either of the "controlling weight" factors when weighing Dr. Menendez's conclusions regarding Plaintiff's mental limitations. *Id.*; *see also Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541,

---

[6] Whereas "mild" and "moderate" functional limitations are generally considered "non-disabling," *see Sims v. Comm'r of Soc. Sec.,* 406 F. App'x 977, 980 (6th Cir. 2011), "marked" and "extreme" limitations are suggestive of disability. *See* 20 C.F.R. Pt. 416, Subpt. P, App. 1 § 12.00(C); *Lankford v. Sullivan*, 942 F.2d 301, 307 (6th Cir. 1991).

7

544 (6th Cir. 2004) (stating that the regulations are designed to "ensure[ ] that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule"). Instead, the ALJ focused on the supportability and specialty factors set forth in 20 C.F.R. § 404.1527(c)(4) and (5), both of which apply only after an ALJ specifically declines to afford a treater's opinion controlling weight. *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013). Because of the ALJ's error in this regard, the Court cannot determine whether he undertook the "two-step inquiry" required when analyzing treating source opinions. *See id*. at 376-78.

The undersigned also finds error in the ALJ's discounting of Dr. Menendez's opinions on the basis that he "is not a recognized mental health professional." PageID 615. Dr. Menendez's lack of specialty in psychiatry or psychology does not equate to a lack of qualification to offer mental health opinions -- especially since "it is well established that primary care physicians (those in family or general practice) 'identify and treat the majority of Americans' psychiatric disorders.'" *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987). A family physician such as Dr. Menendez is authorized to opine regarding Plaintiff's mental status. *Wert v. Comm'r of Soc. Sec.*, 166 F. Supp. 3d 935, 946 (S.D. Ohio 2016); *Byrd v. Comm'r of Soc. Sec.*, No. 3:14-CV-242, 2015 WL 4540575, at *5 (S.D. Ohio May 29, 2015); *King v. Comm'r of Soc. Sec.*, No. 3:14-CV-351, 2016 WL 1729550, at *6 (S.D. Ohio Mar. 28, 2016). Further, the Court previously admonished the ALJ in this regard, noting that an ALJ cannot "fully reject a long-term treating physician's opinion without providing more specific reasoning concerning his or her supposed lack of expertise." *Drew*, 2017 WL 2805098, at *6 (quoting *Marcum v. Comm'r of Soc. Sec.*, No. 3:15-cv-245, 2016 WL 4086984, at *12 (S.D. Ohio Aug. 2, 2016)). The ALJ's failure to "to comply with the mandate of the court and to obey the directions therein without variation and without departing from such directions," is "itself legal error, subject to reversal on further judicial review." *Miller v. Colvin*, No.

3:15CV00153, 2016 WL 6584509, at *3 (S.D. Ohio Apr. 5, 2016) (quoting *Hollins v. Massanari*, 49 Fed. App'x. 533, 536 (6th Cir. 2002)).

The ALJ next discounted Dr. Menendez's opinions because "treatment records supplied by Recovery and Wellness Centers do not coincide with his pessimistic assessment." PageID 615. These records note that Plaintiff presented with depressed and anxious mood, a memory that was not intact, short term memory impairment, and abnormal insight and judgment. PageID 1651, 1656, 1661, 1671, 1677, 1683, 1689, 1695. It is unclear to the undersigned how such clinical observations fail to support Dr. Menendez's assessment regarding Plaintiff's "markedly" limited ability to maintain concentration and attention, remember and understand instructions, and deal with stressful work situations. In light of these clinical observations, it is also unclear to the undersigned how Plaintiff's cooperativeness during counseling sessions and his having "average intelligence" wholly undermine Dr. Menendez's conclusions.[7] PageID 615. The ALJ is not at liberty to "pick and choose" only that evidence which supports his position. *Hawthorne v. Comm'r of Soc. Sec.*, No. 3:13-cv-179, 2014 WL 1668477, at *11 (S.D. Ohio Apr. 25, 2014) (citing *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir.2000)).

Finally, the undersigned finds it important to note the intense scrutiny given to Dr. Mendendez's opinion as compared to the scant and perfunctory analysis given by the ALJ to the medical opinions of the non-treating physicians. Indeed, the entirety of the ALJ's analysis of the state agency's examining psychologist, Brian Griffiths, Psy.D., consists of the conclusory statement that it "tends to mirror that of the claimant's therapists." PageID 613. Similarly, the ALJ assigned partial weight to the opinions of state agency's record reviewing psychologists after concluding --

---

[7] The undersigned notes that the ALJ also attempted to discern Dr. Menendez's opinion from his treatment notes. The ALJ repeatedly asserted that Dr. Menendez's treatment note indicates that Plaintiff suffered a "mild impairment." PageID 615. However, as identified by Plaintiff, this specific note actually reads that Plaintiff experienced only "mild *improvement*" from his treatment. PageID 311 (emphasis added).

without a citation to the record -- that their findings "are consistent with the progress noted by the claimant's therapists, and the GAF score[8] assessed by Dr. Griffiths." *Id.* ALJs are prohibited from applying greater scrutiny to the opinions of treating physicians than non-treaters. *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 379 (6th Cir. 2013).

### B. Physical Limitations

In regard to Plaintiff's physical abilities, in August 2013, Dr. Menendez diagnosed osteoarthritis, and found that Plaintiff was unable "to stand longer than 30 minutes without a break. He is unable to walk longer than 2 blocks without a break. He is unable to lift, push or pull more than 40 lbs. He is unable to climb ladders." PageID 354. In his November 2013 opinion, Dr. Menendez found that Plaintiff was subject to more restrictive physical limitations. PageID 406. Specifically, he could stand or walk for only one hour, sit for up to three hours, and could lift no weight frequently and five to ten pounds occasionally. *Id.*

In March 2014, Dr. Menendez generally increased Plaintiff's limitations, concluding that he could stand for 30 minutes and sit for 60 minutes at a time; work two hours per day; occasionally lift 20 pounds and frequently lift 10 pounds; occasionally bend, stoop, manipulate his hands; and frequently balance and raise his arms. PageID 487-88. In his final opinion, authored in November 2017, Dr. Menendez found that Plaintiff was subject to even greater limitations. Plaintiff could stand and sit for only 15 minutes at a time; work only one hour per day; lift 20 pounds occasionally

---

[8] GAF is a tool used by health-care professionals to assess a person's psychological, social, and occupational functioning on a hypothetical continuum of mental illness. Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000) ("DSM–IV"). "The most recent (5th) edition of the Diagnostic and Statistical Manual of Mental Disorders does not include the GAF scale." *Judy v. Colvin,* No. 3:13cv257, 2014 WL 1599562, at *11 (S.D.Ohio Apr. 21, 2014); *see also* Diagnostic and Statistical Manual of Mental Disorders 16 (5th ed. 2013) ("DSM–V") (noting recommendations "that the GAF be dropped from [DSM–V] for several reasons, including its conceptual lack of clarity ... and questionable psychometrics in routine practice"). As set forth in the DSM–IV, however, a GAF score of 41–50 indicates "[s]erious symptoms (*e.g.,* suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (*e.g.,* no friends, unable to keep a job)." DSM–IV at 34. A GAF score of 51–60 is indicative of "[m]oderate symptoms (*e.g.,* flat affect and circumstantial speech, occasional panic attacks)" or "moderate difficulty in social, occupational, or school functioning (*e.g.,* few friends, conflicts with peers or co-workers)." *Id.*

and 10 pounds frequently; never bend, stoop, or balance; occasionally raise his arms; and would be absent from work three times a month. PageID 986-87.

As noted *supra*, despite acknowledging Dr. Menendez's status as a treating physician and reciting the applicable controlling weight test, the ALJ failed to properly apply it. PageID 621. Instead, the ALJ determined that "the inconsistencies in Dr. Menendez's opinions eliminate the ability to assign his opinions controlling weight." *Id.* Such an analysis is not tantamount to a determination of whether Dr. Menendez's opinions are "not inconsistent with the other substantial evidence in the record." 20 C.F.R. § 404.1527(d)(2). In fact, the ALJ failed to provide even a single citation to the record outside of Dr. Menendez's own opinions. PageID 621. This lack of explanation regarding the "controlling weight [analysis] hinders a meaningful review of whether the ALJ properly applied the treating-physician rule that is at the heart of this regulation." *Gayheart*, 710 F.3d at 376.

Instead, the ALJ analyzed the § 404.1527(c) supportability factor, which is to be "applied after the ALJ decides to 'not give the treating source's medical opinion controlling weight.'" *Lutz*, No. 3:16-CV-210, 2017 WL 3140878, at *3; *see also* 20 C.F.R. § 404.1527(c)(2) (stating that the supportability factor in paragraph (c)(3) is applied when the ALJ does "not give the treating source's medical opinion controlling weight"); *see also Gayheart*, 710 F.3d at 376 (noting that these factors are "properly applied only after the ALJ has determined that a treating-source opinion will not be given controlling weight"). While failing to conduct a controlling weight analysis can constitute harmless error, *see Gayheart*, 710 F.3d. at 380, such failure is not harmless in this case because the record reveals findings that support Dr. Menendez's opinion regarding Plaintiff's physical limitations. Specifically, x-ray imaging showed mild hypertrophic changes with marginal spurring at L3-4. PageID 391. In 2014, MRI imaging revealed mild degenerative changes, minor right central disc bulge at L5-S1, moderate central canal spinal

11

stenosis at C4-5 and C5-6, severe left foraminal narrowing at C3-4, and moderately severe bilateral neural foraminal narrowing at C5-6.  PageID 491-92.

Thus, in light of all the foregoing, the ALJ failed to establish "good reasons" for discounting the mental and physical medical opinions of Plaintiff's treating physician. *Mitchell v. Comm'r of Soc. Sec.*, 330 Fed. Appx. 563, 569 (6th Cir. 2009).

## IV.

When, as here, the ALJ's non-disability determination is unsupported by substantial evidence, the Court must determine whether to remand the matter for rehearing or award benefits. Generally, benefits may be awarded immediately "if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994); *see also Abbott v. Sullivan*, 905 F.2d 918, 927 (6th Cir. 1990). The Court may only award benefits where proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where proof of disability is overwhelming. *Faucher*, 17 F.3d at 176; *see also Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994).

Here, the undersigned finds appropriate a remand for the limited purpose of determining whether Plaintiff was disabled for the closed period between his alleged onset date of January 30, 2013 and September 1, 2016, the date he became "disabled" as a matter of law.  Nothing in this Report and Recommendation impacts the ALJ's determination that Plaintiff was disabled as of September 1, 2016.

## V.

**IT IS THEREFORE RECOMMENDED THAT:** (1) the Commissioner's non-disability finding for the closed period here at issue be found unsupported by substantial evidence, and

**REVERSED**; (2) this matter be **REMANDED** to the Commissioner under the Fourth Sentence of 42 U.S.C. § 405(g) for proceedings consistent with this opinion; and (3) this case be **CLOSED**.

Date:   06/13/2019                                          s/ Michael J. Newman
                                                            Michael J. Newman
                                                            United States Magistrate Judge

## **NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendation. This period is not extended by virtue of Fed. R. Civ. P. 6(d) if served on you by electronic means, such as via the Court's CM/ECF filing system. If, however, this Report and Recommendation was served upon you by mail, this deadline is extended to **SEVENTEEN DAYS** by application of Fed. R. Civ. P. 6(d). Parties may seek an extension of the deadline to file objections by filing a motion for extension, which the Court may grant upon a showing of good cause.

Any objections filed shall specify the portions of the Report and Recommendation objected to, and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based, in whole or in part, upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.

A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof. As noted above, this period is not extended by virtue of Fed. R. Civ. P. 6(d) if served on you by electronic means, such as via the Court's CM/ECF filing system. If, however, this Report and Recommendation was served upon you by mail, this deadline is extended to **SEVENTEEN DAYS** by application of Fed. R. Civ. P. 6(d).

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140, 153-55 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).